UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 20-cr-00280 (TSC) |
| | ) |
| DEANGELO WILLIAMS | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Deangelo Williams has been indicted on one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  Williams has moved to suppress the gun recovered after he was seized by the police.  ECF No. 20, Def. Mot.  The court held hearings on the motion on June 23, 2021 and July 14, 2021, during which the parties examined Metropolitan Police Department ("MPD") Officer Wade Cress and proffered image and video evidence.  For the reasons set forth below, and upon consideration of the record, the court will DENY the motion.

**I.   BACKGROUND**

Based on the testimony from the hearing, as well as the record herein, the court finds the following:  On Dec. 2, 2020, Officer Cress and two other MPD officers, Officer Tyquan Brown and Officer Ahmed Dorghoud, were patrolling the 200 block of V Street NW in response to a series of calls reporting the sounds of gunshots and illicit narcotics activity in the days prior.  The officers were in full MPD uniform and in a marked car.  Shortly after 6 p.m., the officers were conducting building checks in the area, including inside of 249 V Street NW, a three-story apartment building managed by the District of Columbia Housing Authority.  At approximately

1

6:07 p.m., Officers Cress, Brown, and Dorghoud opened the unlocked entrance door of the building, which led onto an entryway foyer and staircase. The officers encountered five to six men gathered inside the foyer.

As Officer Cress entered, Williams, who stood out due to his bright red puffy jacket (visible in body worn camera footage), turned quickly away and ran up the staircase at the rear of the foyer. Officer Cress immediately followed Williams and two other individuals up the staircase. As he ran behind Williams, Officer Cress observed Williams moving his right arm near the front and right portion of his body in a "digging" manner as if to secure something, while his left arm swung freely. Officer Cress told Williams to show his hands and, when Williams did not comply, drew his service weapon as he continued his pursuit up the stairwell. Williams did not pause or otherwise respond to Officer Cress's command or drawn weapon.

Upon reaching the third-floor landing, Williams dropped to the floor and attempted to slide under the railing back towards the second-floor landing below Officer Cress. Looking up at Williams from his position on the stairs between the second and third-floor landings, Officer Cress observed Williams lying face down on the floor. Having begun to slide under the railing, Williams rolled over and showed Officer Cress his open hands. As Williams continued to slide under the third-floor railing, Officer Cress seized him and walked him downstairs. Officer Cress then conducted a protective pat-down of Williams on the second-floor landing and found no weapons on Williams' person. Officer Cress then received a radio call for assistance from Officer Dorghoud, who had pursued an individual outside of 249 V St. NW, placed Williams in handcuffs and escorted him out of the building, where he was detained with other individuals.

Approximately seven minutes after Officer Cress walked Williams down to the second-floor landing, and approximately eight minutes after the officers entered the foyer of 249 V St.

NW, the dispatcher alerted the officers that someone had reported a firearm on the third-floor landing. Officer Cress, accompanied by Officer Brown, immediately returned to the building, where they located the firearm on the floor, slightly behind where Williams had been lying before he slid under the railing.

## II.   LEGAL STANDARD

A party seeking to suppress evidence must show that the evidence was seized as a result of a violation of their constitutional rights. *Wong-Sun v. United States*, 371 U.S. 471 (1963). To do so here, Williams must show that the officers' actions were unlawful and were the but-for and proximate cause of the recovery of the firearm. *See Hudson v. Michigan*, 547 U.S. 586, 593–95 (2006) (holding that the exclusionary rule only applies when the interest protected by the constitutional guarantee has been violated); *Minnesota v. Carter*, 525 U.S. 83, 86 (1998) (holding that an individual seeking to have evidence suppressed must demonstrate that their constitutional rights were violated).

## III.   DISCUSSION

The Fourth Amendment guarantees that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause . . . ." U.S. CONST. AMEND. IV. Therefore, "all seizures, even ones involving only a brief detention short of traditional arrest," must be "founded upon reasonable, objective justification." *United States v. Gross*, 784 F.3d 784, 786 (D.C. Cir. 2015) (internal quotations and citations omitted), *cert. denied*, 136 S. Ct. 247 (2015). Nonetheless, "not all interactions between police officers and citizens amount to a 'seizure' for Fourth Amendment purposes." *Id*.

In asserting a Fourth Amendment violation, a defendant must establish that they had a legitimate expectation of privacy in the place searched or a proprietary interest in the property seized.  *United States v. Salvucci*, 448 U.S. 83, 93 (1980).  "When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had."  *United States v. Thomas*, 864 F.2d 843, 845 (D.C. Cir. 1989) (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.1983), *cert. denied*, 464 U.S. 859 (1983)).  Consequently, "a warrantless search or seizure of property that has been abandoned does not violate the Fourth Amendment."  *Thomas*, 864 F.2d at 845.  The test to determine whether evidence has been voluntarily abandoned "is an objective one," focusing on the intent of the person who is alleged to have abandoned the object, and this "intent may be inferred from words spoken, acts done, and other objective facts."  *Id.* at 846 (internal citations and quotation marks omitted).

In this case, immediately after the uniformed officers entered 249 V St. NW, Williams fled up the stairway.  Officer Cress immediately pursued him, and during the short chase up to the third-floor landing, Officer Cress repeatedly ordered Williams to show his hands and then, when Williams refused to do so, Cress drew his service weapon.  Upon reaching the third-floor landing, Williams lay face down on the ground and began to slide under the landing's railing.  Only then, as Officer Cress looked up at Williams, did Williams roll over and raise his hands such that they were open and visible.  Williams proceeded to slide under the railing, with his hands and body remaining visible throughout, at which point Officer Cress took Williams down to the second-floor landing and immediately performed a protective pat down.  Several minutes later, upon receiving a third-party tip, the police located the firearm in question on the third-floor landing, immediately adjacent to and slightly behind where Williams had been lying before rolling over and raising his arms.

The court finds that these circumstances show that Williams intended to abandon the gun on the landing before he submitted to the officers' show of authority. As the Supreme Court held in *Hodari D*, contraband that is abandoned by a person who is fleeing the police, *before* the person is seized by police, is not "the fruit of a seizure" and therefore should not be suppressed. *California v. Hodari D.*, 499 U.S. 621, 629 (1991). Police pursuit alone "does not of itself render an abandonment involuntary." *United States v. Brown*, 663 F.2d 229, 231 (D.C. Cir. 1981) (en banc). Although the D.C. Circuit has explained that it "will not treat an item as voluntarily abandoned when a person discards it due to the unlawful activities of police officers, as where the disposal was prompted by police efforts to make an illegal arrest or search," *United States v. Griffith*, 867 F.3d 1265, 1279 (D.C. Cir. 2017), the court finds no facts indicating that the gun was abandoned as the result of such illegal police conduct.

The court therefore finds that there was no illegal search or seizure before Williams abandoned the firearm. *Compare United States v. Aikens*, 13 F. Supp. 2d 28, 33–34 (D.D.C. 1998) (finding that the defendant had not "discarded the gun in the trash can as a result of illegal police conduct" where "no seizure of the defendant in the Fourth Amendment sense occurred before the defendant abandoned the gun"), *with Brodie*, 742 F.3d at 1060–61 (finding that recovery of weapons abandoned during flight *after* an initial seizure was not "sufficiently attenuated from [an] illegal stop") *and Wood*, 981 F.2d at 537 (affirming the suppression of a firearm dropped by a defendant *after* police "had unlawfully ordered him to halt right there" and the defendant immediately "froze in his tracks"). The fact that the police ordered Williams to show his hands after he fled when they entered the building does not constitute a seizure. *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991). This Circuit has made clear that it is only when "a person submits to the officer's show of authority" prior to the purported abandonment

5

that *Hodari D.* becomes "inapplicable." *United States v. Griffith*, 867 F.3d 1265, 1280 (D.C. Cir. 2017) (citing *Wood*, 981 F.2d at 539–41).  Here, as made clear by Officer Cress's testimony and the proffered video evidence, Williams did not yield to the officers' show of authority, including Officer Cress's requests that he stop.  Instead, he continued to flee.  The Fourth Amendment "does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee.  That is no seizure." *Hodari D.*, 499 U.S. at 626.  Thus, the officers' warrantless seizure of the gun from the landing in the stairwell does not implicate the Fourth Amendment, *see United States v. Wider*, 951 F.2d 1283, 1285–86 (D.C. Cir. 1991) (defendant's acts of placing paper bag on steps in public courtyard and walking away from the bag constituted abandonment); *Thomas*, 864 F.2d at 846 (defendant's acts of fleeing with a gym bag into an apartment building upon seeing police, leaving bag on the floor in a public hallway of building and walking away from bag constituted abandonment).

## IV.     CONCLUSION

For the foregoing reasons, the court will DENY Williams's Motion to Suppress, ECF No. 20.  A corresponding order is forthcoming.

Date:  September 30, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge